UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
LEVI SPUTZ, individually and on behalf of all
others similarly situated,

         Plaintiff,      **OPINION & ORDER**

  - against -         No. 21-CV-4663 (CS)

ALLTRAN FINANCIAL, LP,

         Defendant.
-------------------------------------------------------------x

Appearances:

Yitzchak Zelman, Esq.
Marcus Zelman, LLC
Asbury Park, New Jersey
*Counsel for Plaintiff*

Kirsten H. Smith
Sessions, Israel & Shartle, LLC
Metairie, LA
*Counsel for Defendant*

Seibel, J.

   Before the Court is Defendant's motion to dismiss.  (ECF No. 14.)  For the following

reasons, Defendant's motion is GRANTED.

## I.  BACKGROUND

   For purposes of the motion, the Court accepts as true the facts, but not the conclusions,

set forth in Plaintiff's Complaint, (ECF No. 1 ("Complaint")).

## A.  Facts

   Defendant is a debt collector.  This Fair Debt Collection Practices Act ("FDCPA")

dispute arises out of Defendant's sharing of Plaintiff's information with an outside commercial

mail house that Defendant used to prepare its mailings.  (*Id.* ¶ 18.)  Defendant disclosed to the

mail house:  (1) "Plaintiff's status as a debtor;" (2) "the fact that Plaintiff allegedly owed

$14,715.61 to U.S. Bank National Association; and" (3) "other highly personal pieces of

information," which are unspecified.  (*Id.* ¶ 19.)

Plaintiff alleges that Defendant violated the provision of the FDCPA that states, with

exceptions not relevant here, that "a debt collector may not communicate, in connection with the

collection of any debt, with any person other than the consumer, his attorney, a consumer

reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the

attorney of the debt collector."  15 U.S.C. § 1692c(b).  Plaintiff alleges that he "was harmed by

being subjected to abusive collection practices, from which he had a substantive right to be free,

by having his privacy invaded, and by having his private and protected information shared and

disseminated with unauthorized parties."  (Complaint ¶ 31.)

Plaintiff does not allege that a mail house employee reviewed or otherwise saw his

information.  Rather, he alleges that Defendant disclosed the information to the mail house and

"[t]he mail house then populated some or all of this information into a pre-written template,

printed, and prepared the letter for mailing to Plaintiff's residence in New York."  (*Id.* ¶ 20.)

**B.** **Procedural History**

Plaintiff brought this putative class action on May 25, 2021, asserting claims on behalf of

himself and others similarly situated under FDCPA Sections 1692c and 1692f.  (*Id.* ¶¶ 32, 42-

50.)  The class alleged in the Complaint was to consist of individuals in New York "whose

information was shared by Defendant to its mail house . . . in connection with a debt purportedly

whose original creditor was U.S. Bank National Association . . . during the one year period

preceding the filing of the Complaint in this action."  (*Id.* ¶ 33.)

Defendant answered the complaint on July 26, 2021, (ECF No. 7), and the Court held an

initial conference on September 14, 2021, (*see* Minute Entry dated Sept. 14, 2021).  At the initial

conference, Defendant's counsel explained that Defendant intended to file a motion to dismiss

for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1).  The parties then

discussed their arguments and the Court set a briefing schedule.  The motion was fully briefed on

November 12, 2021.

## II.     LEGAL STANDARD

Under Rule 12(b)(1), a district court may properly dismiss an action for lack of subject

matter jurisdiction "if the court lacks the statutory or constitutional power to adjudicate it."

*Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 416-17 (2d Cir.

2015) (cleaned up).  "A plaintiff asserting subject matter jurisdiction has the burden of proving

by a preponderance of the evidence that it exists."  *Makarova v. United States*, 201 F.3d 110, 113

(2d Cir. 2000).  In determining whether subject matter jurisdiction exists, a district court "must

take all facts alleged in the complaint as true and draw all reasonable inferences in favor of

plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing

from the pleadings inferences favorable to the party asserting it."  *Morrison v. Nat'l Austl. Bank*

*Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (cleaned up), *aff'd*, 561 U.S. 247 (2010).  A court may

also "rely on evidence outside the complaint" when deciding a Rule 12(b)(1) motion.  *Cortlandt*

*St. Recovery Corp.*, 790 F.3d at 417.

Article III of the Constitution limits a federal court's jurisdiction to actual "Cases" and

"Controversies."  U.S. Const. art. III, § 2; *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560

(1992).  "Constitutional standing is the threshold question in every federal case, determining the

power of the court to entertain the suit."  *Leibovitz v. N.Y.C. Transit Auth.*, 252 F.3d 179, 184 (2d

Cir. 2001) (cleaned up).  That is, where a party lacks standing to bring a claim, the court lacks

subject matter jurisdiction over that claim and must dismiss it.  *See SM Kids, LLC v. Google*

*LLC*, 963 F.3d 206, 210 (2d Cir. 2020).

## III.    DISCUSSION

There are three constitutional standing requirements that every plaintiff must satisfy in

order to invoke the jurisdiction of the federal courts:  (1) "an injury in fact (*i.e.*, a concrete and

particularized invasion of a legally protected interest)"; (2) "causation (*i.e.*, a fairly traceable

connection between the alleged injury in fact and the alleged conduct of the defendant)"; and (3)

"redressability (*i.e.*, it is likely and not merely speculative that the plaintiff's injury will be

remedied by the relief plaintiff seeks in bringing suit)."  *Sprint Commc'ns Co. v. APCC Servs.,*

*Inc.*, 554 U.S. 269, 273-74 (2008) (cleaned up).  These minimum requirements to invoke

jurisdiction exist in all cases, separate and apart from whatever statutory standing requirements

may exist in the laws under which a plaintiff has filed suit.  *See All. for Env't Renewal v.*

*Pyramid Crossgates Co.*, 436 F.3d 82, 85-87 (2d Cir. 2006).  The party invoking federal

jurisdiction bears the burden of establishing that it has standing to do so.  *Lujan*, 504 U.S. at 561.

Defendant's standing challenge here focuses on the "concrete-harm requirement" of the

injury-in-fact inquiry.  *TransUnion LLC v. Ramirez*, 141. S. Ct. 2190, 2204 (2021).  More

specifically, Defendant argues that Plaintiff lacks Article III standing to bring this action because

Plaintiff fails to allege that Defendant's use of a mail house caused him "any injury in fact, i.e.

any concrete harm."  (ECF No. 15 ("D's Mem.") at 1.)

*TransUnion* explains that tangible harms, including "[m]onetary harms," are among those

that "readily qualify as concrete injuries under Article III."  *TransUnion*, 141 S. Ct. at 2204.

Intangible harms also may be concrete, provided they satisfy the "close relationship" analysis,

4

meaning the alleged intangible harm must have a "'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016)).  This requires the Plaintiff to identify "a close historical or common-law analogue for the[] asserted injury." *Id.*  But the injury need not be "an exact duplicate" of the common-law harm. *Id.* at 2209.  "In a suit for damages," such as the instant case, "the mere risk of future harm, standing alone, cannot qualify as a concrete harm – at least unless the exposure to the risk of future harm itself causes a *separate* concrete harm." *Id.* at 2210-11 (emphasis in original).

Regarding statutory harms, *TransUnion* held that while Congress's views on whether a harm is sufficiently concrete "may be 'instructive,'" *id.* at 2204 (quoting *Spokeo*, 136 S. Ct. at 1549), courts may not assume that the existence of a statutory prohibition or obligation automatically elevates violation of that prohibition or obligation to a harm that is concrete under Article III, *see id.* at 2204-05.  "For standing purposes, therefore, an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." *Id.* at 2205.  To establish standing a plaintiff must not only show that the defendant's conduct violated a statute, but that the plaintiff was "*concretely harmed* by a defendant's statutory violation." *Id.* (emphasis in original).

A.      **Harm to Intangible Interest**

Because Plaintiff has not alleged any actual tangible harm, under *TransUnion* he must demonstrate some other harm that bears a "close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Id.* at 2204 (cleaned up).  That is, Plaintiff must identify a "close historical or common-law analogue for [his] asserted injury." *Id.*

But the intangible harm from the statutory violation need not exactly track the common law

harm.  *Id.*

"*TransUnion* and cases decided since demonstrate that, where a key element of the

analogous common-law or historical harm is missing, the plaintiff lacks standing."  *Kola v.*

*Forster & Garbus LLP*, No. 19-CV-10496, 2021 WL 4135153, at *6 (S.D.N.Y. Sept. 10, 2021).

For example, as set forth in *Kola*, *TransUnion* involved two groups of plaintiffs suing under the

Fair Credit Reporting Act ("FCRA") because they had been incorrectly labelled "potential

terrorists" in TransUnion's consumer credit files.  *TransUnion*, 141 S. Ct. at 2207-09.

TransUnion had sent the reports of some of the plaintiffs to third parties, and the Court

determined that those plaintiffs suffered a concrete harm, the character of which "bears a

sufficiently close relationship to the harm from a false and defamatory statement."  *Id.* at 2209.

Conversely, those plaintiffs whose reports were never released to third parties had no standing.

*Id.* at 2210.  The Court explained that because the element of disclosure or publication is a key

part of the interests protected by defamation, "[t]he mere presence of an inaccuracy in an internal

credit file, if it is not disclosed to a third party, causes no concrete harm."  *Id.*

In *Kola*, I held that the plaintiff did not have standing to sue over an allegedly confusing

collection letter, despite her attempted analogy to common-law fraud, because she had no

intention or ability to pay and thus had no facts akin to the reliance requirement of fraudulent or

negligent misrepresentation.  2021 WL 4135153, at *7.

Here, Plaintiff contends that the analogous harm to the FDCPA violations he alleges is

public disclosure of private information (or "invasion of privacy").  This privacy tort, which is

recognized under the common law of many states, *see* Restatement (Second) of Torts §§ 652A,

652D, although not New York, *see Farrow v. Allstate Ins. Co.*, 862 N.Y.S.2d 92, 93 (App. Div.

Case 7:21-cv-04663-CS   Document 23   Filed 12/05/21   Page 7 of 14

2008), applies where the defendant "gives publicity to a matter concerning the private life of

another" where the matter publicized involves facts that "(a) would be highly offensive to a

reasonable person, and (b) [are] not of legitimate concern to the public," Restatement (Second)

of Torts § 652D.  "'Publicity,'" in this context, "means that the matter is made public, by

communicating it to the public at large, or to so many persons that the matter must be regarded

as substantially certain to become one of public knowledge." *Id.* cmt. a.  Thus, "it is not an

invasion of the right of privacy . . . to communicate a fact concerning the plaintiff's private life

to a single person or even to a small group of persons." *Id.*

Defendant argues – and the Court agrees – that the "transmission of [Plaintiff's]

information to [Defendant's] letter vendor does not remotely rise to the level of 'publicizing'

private information to the public at large." (D's Mem. at 14.)  Because publicity is essential to

liability in a suit for public disclosure of private facts, it follows that Plaintiff lacks standing.  *See*

Restatement (Second) of Torts § 652D; *id.* cmt. a.  Like the plaintiffs in *TransUnion* who did not

have standing because their credit reports were not disseminated to a third party, which is

"essential to liability in a suit for defamation," *id.* at 2209 (cleaned up), here, plaintiff lacks

standing because his private information was not disclosed to the public, which is essential to

liability in a suit for public disclosure of private information, *see Ciccone v. Cavalry Portfolio

Servs.*, No. 21-CV-2428, 2021 WL 5591725, at *3-4 (E.D.N.Y. Nov. 29, 2021).

Plaintiff seems to acknowledge that publicity is an element at various points throughout

his opposition.  *See, e.g.*, P's Opp. at 15 (quoting J. L. Litwin, Annotation, *Public Disclosure of

Person's Indebtedness as Invasion of Privacy*, 33 A.L.R.3d 154, § 2[a] (1970 & 2021 Supp.)

("The giving of unreasonable *publicity* to private debts has been generally recognized as an

actionable invasion of the debtor's right of privacy.")) (emphasis added).[1]  But he argues that "an exact duplicate of a common-law claim" is not required, (P's Opp. at 12) (cleaned up), and relies on the observation of the Eleventh Circuit in *Hunstein v. Preferred Collection and Management Services Inc.*, 17 F.4th 1016 (11th Cir. 2021) (*Hunstein II*) – a decision that has been since vacated pending an *en banc* rehearing, *see Hunstein v. Preferred Collection and Management Services Inc.*, 17 F.4th 1103 (11th Cir. 2021) – that the statutory violation need only present the same kind of harm, not the same degree of harm, as the common law analogue, *Hunstein II*, 17 F.4th at 1027-29.  Thus, he argues, the private information need not be disseminated to a large group of people – in other words, the dissemination need not reach the degree of common law invasion of privacy – if it is disseminated to any people who are not entitled to have it, because that is the kind of harm against which the invasion of privacy tort protects.

This argument fails, however, because the complaint here does not allege even the same kind of harm.  Plaintiff here, unlike the plaintiff in *Hunstein*, does not allege that any human being ever saw his private information.  To the contrary, it seems clear from the Complaint that the mailing house used automated systems to "populate" Plaintiff's information into a form that was mailed out.  (Complaint ¶ 20.)  Indeed, the purpose of a debt collector using a mailing vendor is because mailing vendors automate the process.  The plaintiff in *Hunstein*, in contrast, alleged that human beings – individual employees of the mailing vendor – had seen his information, and the Court specifically relied on that fact as true in finding harm of a kind similar to invasion of privacy.  *Hunstein II*, 17 F.4th at 1021, 1027-28, 1031.  As another district court

---

[1] This Annotation also provides that a "debtor has a cause of action for invasion of privacy where the creditor attempted to force payment of the debt by subjecting the debtor to public contempt, insult, and ridicule" and that it "is well established that the mere sending of a letter . . . to the debtor's employer for the purpose of obtaining the employer's assistance in collecting the money due does not give rise to a cause of action for invasion of privacy." *Id.*

explained, on similar facts, "[*Hunstein*] dealt with a statutory injury that was a difference in

*degree* from the common law." *Shields v. Pro. Bureau of Collections of Maryland, Inc.*, No. 22-

CV-2205, 2021 WL 4806383, at \*3 (D. Kan. Oct. 14, 2021) (emphasis in original).[2]  But "[h]ere,

there is a difference in *kind*.  Plaintiff does not allege that anyone has read [his] information

rather than merely processed it, or that there's otherwise been publicity.  Thus, [he] has not

alleged an injury traditionally recognized in American courts." *Id.* (cleaned up).  To find

otherwise, I would have to conclude that the common law protected against the exposure of

private information to an inanimate object like a computer or printer.[3]

 *TransUnion* itself made the same point, albeit in dictum and in reference to the

publication requirement of defamation rather than invasion of privacy.  In footnote 6, it noted

that the plaintiff's newly minted argument – that TransUnion had disclosed private information

to its own employees and to its mailing vendor – was not only "forfeited," but "unavailing."

*TransUnion*, 141 S. Ct. at 2210 n.6.  It noted that the cases on which plaintiffs relied required

"evidence that the defendant actually brought an idea to the perception of another, and thus

generally require evidence that the document was actually read and not merely processed." *Id.*

---

[2] In *Shields*, Judge Teeter discusses a since-superseded *Hunstein* opinion, which was issued by the Eleventh Circuit on April 21, 2021, prior to the Supreme Court's *TransUnion* Opinion.  *Hunstein v. Preferred Collection and Management Services, Inc.*, 994 F.3d 1341 (11th Cir. 2021) (*Hunstein I*).  After *TransUnion*, the Eleventh Circuit panel reheard *Hunstein* and on October 28, 2021 issued a new opinion superseding its previous ruling.  *Hunstein v. Preferred Collection and Management Services, Inc.*, 17 F.4th 1016 (11th Cir. 2021) (*Hunstein II*).  Because the Eleventh Circuit came out substantially the same way in its post-*TransUnion* decision, the analysis in *Shields* still applies.  I note that, as previously discussed, the Eleventh Circuit's post-*TransUnion* decision has been since vacated pending an *en banc* rehearing.

[3] This is not to say that there would be standing if an employee of the mail house had seen the information regarding Plaintiff's debt.  I am dubious that there would be – would any debtor really care if his debt became known not only to the creditor and debt collector but also to a random employee of the debt collector's contractor? – but I do not reach that issue.

(cleaned up).  The same problem exists here:  Plaintiff has not alleged that a single person read or perceived his information, just that it was processed by a machine.

Another distinction between *Hunstein* and this case is that the information disclosed in that case included "sensitive medical information."  *Hunstein II*, 17 F.4th at 1020-21, 1027.  It is not clear that the Eleventh Circuit would have come out the same way if only the status of the debt, and not the fact that it arose from a medical issue of the plaintiff's minor son (who was named), had been revealed.  While Plaintiff here alleges in conclusory fashion that Defendant disclosed "other highly personal pieces of information," (Complaint ¶ 19), he provides no facts rendering that conclusion plausible.

I respectfully find the *Hunstein II* dissent, 17 F.4th at 1038-48 (Tjoflat, C.J. dissenting) ("If Hunstein's alleged statutory violation is analogous to public disclosure of private facts, *TransUnion*'s close-relationship test is really a third-cousin-twice-removed test."), and Judge Brown's decision in *In re FDCPA Mailing Vendor Cases*, No. 21-2312, 2021 WL 3160794, at *5 (E.D.N.Y. July 23, 2021) (dismissing several lawsuits arising from the "recently-developed mailing vendor theory"), to be more persuasive than the now-vacated *Hunstein II* majority opinion.[4]

I also agree with Judge Brown that "it would be difficult to suggest, using the invasion of privacy analysis adopted in *Hunstein*, that communication of purported non-payment of a relatively *de minimis* debt to a mailing vendor constitutes a matter publicized of a kind that would be highly offensive to a reasonable person."  *In re FDCPA Mailing Vendor Cases*, 2021

---

[4] Further, even if the Eleventh Circuit comes out the same way *en banc*, *Hunstein II* would be instructive, but "not binding upon this Court."  *In re FDCPA Mailing Vendor Cases*, 2021 WL 3160794, at *5; *see Ciccone*, 2021 WL 5591725, at *3 ("However the Eleventh Circuit eventually rules, its decision does not bind this Court, and at this juncture, the vacated opinions are of little persuasive value.").

WL 3160794, at *6 (cleaned up)[5]; *see also* Restatement (Second) of Torts § 652D cmt. b (listing

"sexual relations," "family quarrels," and "unpleasant or disgraceful illnesses" as examples of

the "private facts" covered by the tort of public disclosure of private facts).  While the cases at

issue before Judge Brown involved debts ranging from $25.00 to $482.28, *In re FDCPA Mailing*

*Vendor Cases*, 2021 WL 3160794, at *6, and here Plaintiff allegedly owed $14,715.61,

(Complaint ¶ 19), the amount of the debt is not, to my mind, the reason the purported disclosure

is harmless.[6]  What matters is not so much the amount or the nature of the debt,[7] but to whom the

information is exposed.  While accumulating debt that one does not repay might expose one to

opprobrium if it became known to others in society, it does not expose one to any additional

opprobrium if that fact becomes known to a debt collector's mailing vendor, rather than just the

debt collector – or, more accurately, to a debt collector's mailing vendor's computer, rather than

just the debt collector.

"Congress enacted FDCPA in order 'to eliminate abusive debt collection practices by

debt collectors, to insure that those debt collectors who refrain from using abusive debt

collection practices are not competitively disadvantaged, and to promote consistent State action

to protect consumers against debt collection abuses.'"  *Greco v. Trauner, Cohen & Thomas,*

*L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005) (quoting 15 U.S.C. § 1692(e)).  I have previously noted

that an analogous statute, the Fair Credit Reporting Act, "was enacted to remedy real abuses in

credit reporting, not for imaginative attorneys to advance farfetched, if not absurd, interpretations

---

[5] Judge Brown discusses *Hunstein I*, the since-superseded *Hunstein* opinion, but his analysis is still applicable.  *See* note 2.

[6] For example, the debtor in *Shields* owed around $200,000.  *Shields*, 2021 WL 4806383, at *1.

[7] I acknowledge that defaulting on student loan debt, as in *Shields*, may generally be regarded as more understandable than defaulting on credit card debt, as here.

11

of the statute on behalf of unharmed debtors.  The statute is a shield for debtors, not a sword for

lawyers."  *Ostreicher v. Chase Bank USA, N.A.*, No. 19-CV-8175, 2020 WL 6809059, at *6

(S.D.N.Y. Nov. 19, 2020); *see Quaglia v. NS193*, No. 21-CV-3252, (N.D. Ill. Oct. 12, 2021),

ECF No. 26 ("[It] is difficult to imagine Congress intended for the FDCPA to extend so far as to

prevent debt collectors from enlisting the assistance of mailing vendors to perform ministerial

duties, such as printing and stuffing the debt collectors' letters, in effectuating the task entrusted

to them by creditors – especially when so much of the process is presumably automated in this

day and age.  In the Court's view, such a scenario runs afoul of the FDCPA's intended purpose

to prevent debt collectors from utilizing *truly offensive* means to collect a debt") (emphasis

added).

      In sum, Plaintiff's failure to establish a concrete harm sufficient to establish standing

deprives this Court of subject matter jurisdiction over his claims.  Accordingly, Plaintiff's claims

must be dismissed.

**B.**    **Leave to Amend**

      Leave to amend a complaint should be freely given "when justice so requires."  Fed. R.

Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to

amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (cleaned up).  "Leave to amend, though

liberally granted, may properly be denied for:  'undue delay, bad faith or dilatory motive on the

part of the movant, repeated failure to cure deficiencies by amendments previously allowed,

undue prejudice to the opposing party by virtue of allowance of the amendment, futility of

amendment, etc.'"  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v.*

*Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has not asked to amend again or otherwise suggested he is in possession of facts that would cure the deficiencies identified in this ruling.  Indeed, "[t]he problem[s] with [Plaintiff's] causes of action [are] substantive," and "better pleading will not cure [them]." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  Accordingly, the Court declines to grant leave to amend *sua sponte*.  *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) (*per curiam*) (no abuse of discretion in denying leave to amend where plaintiff's counsel made no showing that complaint's defects could be cured); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make the complaint viable and plaintiffs did not request leave to amend); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (denial of leave to amend would be proper where "request gives no clue as to how the complaint's defects would be cured") (cleaned up).

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.  The bench ruling scheduled for December 9, 2021 is canceled as moot.  The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 14), and close the case.

**SO ORDERED.**

Dated: December 5, 2021
      White Plains, New York

                                                      CATHY SEIBEL, U.S.D.J.